2020 PA Super 64

| | | |
|---|---|---|
| JOSHUA KEESEE AND MCON ELECTRIC, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOHN J. DOUGHERTY (INDIVIDUALLY AND IN HIS CAPACITY AS BUSINESS MANAGER OF INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION 98) AND INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION 98 AND CHRISTOPHER OWENS AND THOMAS RODRIGUEZ AND NIKO RODRIGUEZ | : | No. 1670 EDA 2018 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Appellants | : | |

Appeal from the Order Entered May 15, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 170801229

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

OPINION BY OLSON, J.:                      Filed: March 16, 2020

Appellants, John J. Dougherty, individually and in his capacity as business manager of the International Brotherhood of Electrical Workers Local Union 98 ("Dougherty"), International Brotherhood of Electrical Workers Local Union 98 ("IBEW 98"), Christopher Owens ("Owens"), Thomas Rodriguez, and Niko Rodriquez appeal from the order entered May 15, 2018, denying Appellants' motion to stay the civil action filed against them by Joshua Keesee[1]

---

[1] We note that Joshua Keesee's last name was misspelled on the Notice of Appeal. The case caption has been corrected to reflect the accurate spelling of Joshua Keesee's last name.

("Keesee") and MCON Electric, LLC ("MCON"). We vacate the order and remand the case.

The trial court summarized the factual and procedural history as follows:

[Keesee and MCON] filed the complaint in this action on August 16, 2017. The amended complaint advances causes of action for battery, intentional interference with contractual relations, concerted tortious action, and civil conspiracy. A summary of its pertinent allegations follows.

[Keesee] is the owner and president of [MCON], a company in the business of supplying electrical contractor work. [Dougherty] is the business manager of [] IBEW 98, the electrical labor union maintaining its business in Philadelphia. [] Owens, Thomas Rodriguez and Niko Rodriguez are IBEW 98 union members.

In 2013, real-estate developer, Barry Sable, entered into an unwritten contract with Keesee [and] MCON to provide electrical work on a townhome project in Philadelphia. He selected MCON because it is a non-union contractor.

[Dougherty, Owens, Thomas Rodriguez, and Niko Rodriguez], on behalf of IBEW 98, embarked on an unsuccessful campaign of intimidation and coercion to persuade [Keesee and MCON] to join the union. On January 21, 2016, [Dougherty, Owens, Thomas Rodriguez, and Niko Rodriguez] physically attacked Keesee, causing him to suffer a broken nose, concussion, and various injuries requiring medical care. [Dougherty, Owens, Thomas Rodriguez, and Niko Rodriguez's] harassing behavior[s] continued in the following days until January 23, 2016, when developer Sable severed his relationship with [Keesee and MCON] and retained a union contractor to finish the work.

[Keesee and MCON's] claims in this civil action sound in tort and contract. They seek punitive and other damages stemming from Keesee's injuries on January 21, 2016, the subsequent loss of his reputation and income, and the value of the contract terminated by developer Sable.

The [trial] court overruled [Appellants'] preliminary objections on November 30, 2017, ordering [Appellants] to answer [Keesee and MCON's] amended complaint.

- 2 -

On April 13, 2018, a little over four months later and in the wake of news reports that [] Dougherty was the subject of federal and state criminal investigations, [Appellants] filed a [m]otion to [s]tay [p]roceedings on the grounds that active litigation of [Keesee and MCON's] civil action imperils [Dougherty, Owens, Thomas Rodriguez, and Niko Rodriguez's] privileges against self-incrimination, a protection secured by the [United States and Pennsylvania C]onstitutions.

The [trial] court denied the [m]otion to [s]tay[] and denied [Appellants'] motion for reconsideration.

Trial Court Opinion, 4/9/19, at 2-3 (citations to record omitted). This appeal followed.[2]

On August 2, 2018, this Court ordered Appellants to show cause why the order denying the motion to stay was not an interlocutory order and, instead, was immediately appealable. *Per Curiam* Order, 8/2/18. Appellants filed a response, and this Court subsequently discharged the rule to show cause order, referring the issue to the merits panel.

Appellants raise the following issue for our review:

Did the [t]rial [c]ourt abuse its discretion, or commit an error of law, in denying [Appellants'] [m]otion to [s]tay pending parallel criminal proceedings[3], and thereby denying [Dougherty, Owens, Thomas Rodriguez, and Niko Rodriguez's] rights against self-incrimination under the United States and Pennsylvania Constitutions, where all six factors of the relevant balancing test

---

[2] Appellants filed a timely notice of appeal. The trial court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants timely complied. The trial court subsequently filed its Rule 1925(a) opinion.

[3] We note the pending criminal proceedings can be found at ***United States of Am. v. John Dougherty, et al.***, No. 2:19-cr-00064-JLS (E.D. Pa. January 29, 2019). "This [C]ourt can take judicial notice of court filings to the extent that a party has taken advantage of the judicial process." ***See Spanier v. Freeh***, 95 A.3d 342, 348 n.3 (Pa. Super. 2014).

establish that a stay is required in order to protect [Dougherty, Owens, Thomas Rodriguez, and Niko Rodriguez's] [c]onstitutional rights?

Appellants' Brief at 2.

Before addressing the merit of Appellants' issue, we must first examine whether we have jurisdiction in this matter. An order denying a motion to stay generally is considered interlocutory and not appealable unless it satisfies the collateral order doctrine. *Spanier v. Freeh*, 95 A.3d 342, 345 (Pa. Super. 2014). Our Supreme Court held,

> Pennsylvania Rule of Appellate Procedure 313(b) permits a party to take an immediate appeal as of right from an otherwise unappealable interlocutory order if the order meets three requirements: (1) the order must be separable from, and collateral to, the main cause of action; (2) the right involved must be too important to be denied review; and (3) the question presented must be such that if review is postponed until after final judgment, the claim will be irreparably lost. All three prongs of Rule 313(b) must be met before an order may be subject to a collateral appeal; otherwise, the appellate court lacks jurisdiction over the appeal.

*Commonwealth v. Harris*, 32 A.3d 243, 248 (Pa. 2011); *see also* Pa.R.A.P. 313(b) (defining a collateral order as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost").

> With regard to the first prong of the collateral order doctrine, an order is separable from the main cause of action if it is entirely distinct from the underlying issue in the case and if it can be resolved without an analysis of the merits of the underlying dispute. With regard to the second prong, a right is important if the interests that would go unprotected without immediate appeal

are significant relative to the efficiency interests served by the final order rule. Notably, the rights must be deeply rooted in public policy going beyond the particular litigation at hand. With regard to the third prong, a right sought to be asserted on appeal will be "irreparably lost" if, as a practical matter, forcing the putative appellant to wait until final judgment before obtaining appellate review will deprive the appellant of a meaningful remedy.

*Commonwealth v. Magee*, 177 A.3d 315, 319-320 (Pa. Super. 2017) (citations, ellipsis, and some quotation marks omitted).

Here, Appellants' issue concerning the denial of their motion to stay the civil proceedings (centered upon preservation of Appellants' constitutional privilege against self-incrimination) can be decided without reaching the merits of Keesee and MCON's underlying causes of action. Therefore, the first prong of the collateral order doctrine has been satisfied.

Turning next to an analysis of the second prong of the collateral order doctrine, "courts in this Commonwealth have continually recognized that the Fifth Amendment right against self-incrimination is the type of privilege that is deeply rooted in public policy and 'too important to be denied review.'" *Commonwealth v. Davis*, 176 A.3d 869, 874 (Pa. Super. 2017) (citation omitted), *appeal granted on other grounds*, 195 A.3d 557 (Pa. 2018); *see also Commonwealth v. Davis*, 220 A.3d 534, 542 (Pa. 2019) (holding, the right against self-incrimination "not only applies to a defendant in a criminal trial, but "in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate [the speaker] in future criminal proceedings" (citation omitted)). Appellants assert the denial of their motion to stay

"effectively destroy[ed Dougherty, Owens, Thomas Rodriguez, and Niko Rodriguez's] constitutional rights against self-incrimination. Appellants' Brief at 11; *see also* Appellants' Statement of Appellate Jurisdiction, 8/13/18, at 7. Therefore, the second prong of the collateral order doctrine has been satisfied.

Finally, we agree that Appellants' rights against self-incrimination would be "irrevocably lost" if our review were postponed until after final judgment. Without immediate review, Appellants would either forgo testifying on their own behalf in the civil action or risk providing answers that might incriminate them in the pending criminal proceedings.

Having found Appellants satisfied all three prongs of the collateral order doctrine, this Court has jurisdiction over this appeal, and we now address the merit of Appellants' claim.

The decision to grant or deny a motion to stay is within the sound discretion of the trial court, and we will review that decision for abuse of discretion. *See generally In re Upset Sale, Tax Claim Bureau of Berks County*, 479 A.2d 940, 946 (Pa. 1984). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused." *Cigna Corp. v. Executive Risk Indem., Inc.*, 111 A.3d 204, 211 (Pa. Super. 2015), *appeal denied*, 126 A.3d 1281 (Pa. 2015).

Determining the appropriate balancing test or factors the trial court should consider when deciding whether to grant or deny a motion to stay a civil case pending the resolution of a related criminal case appears to be an issue of first impression for this Court. We are guided by this Court's acknowledgment in **Spanier**, **supra** of the six-factor balancing test set forth in **In re Adelphia Communications Sec. Litig.**, No. 02-1781, 2003 WL 22358819 (E.D. Pa. May 13, 2003), although we find no adoption of this specific balancing test by our Supreme Court. **See Spanier**, 95 A.3d at 345.

In **Adelphia**, the United States District Court for the Eastern District of Pennsylvania held,

> In deciding whether to stay a civil case pending the resolution of a related criminal case, courts consider many factors, including: (1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal proceedings, including whether any defendants have been indicted; (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay; (4) the burden on the defendants; (5) the interests of the court; and (6) the public interest.

**Adelphia**, 2003 WL 22358819 at *3. The **Adelphia** court considered all six of the factors in a balancing test to determine whether the grant of the stay was appropriate. **Id.** at *3-*7, **see also Spanier**, 95 A.3d at 345 (noting the appropriate test is a six-factor balancing test).

Consideration of these six factors in deciding whether to grant or deny a motion to stay a civil proceeding pending the resolution of a related criminal matter is further supported by the four factors our Supreme Court considered

- 7 -

when determining whether to grant or deny a motion to stay a case pending an appeal. *See Pa. Pub. Util. Comm'n v. Process Gas Consumers*, 467 A.2d 805, 809 (Pa. 1983) (stating, "the standards established by the [court in *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921 (D.C. Cir. 1958)] as refined by the [*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977)] decision provide a rational basis for the issuance of a **stay pending appeal** and are the criteria to be followed by the courts of this Commonwealth" (emphasis added)). In *Process Gas*, our Supreme Court held the grant of a motion to stay pending appeal is warranted if:

1. The petitioner makes a strong showing that he is likely to prevail on the merits.
2. The petitioner has shown that without the requested relief, he will suffer irreparable injury.
3. The issuance of a stay will not substantially harm other interested parties in the proceedings.
4. The issuance of a stay will not adversely affect the public interest.

*Process Gas Consumers*, 467 A.2d at 808. The *Process Gas* four-factors test served as a template employed by the *Adelphia* court to assess the propriety of staying a civil proceeding pending the resolution of a related criminal case. Therefore, the factors identified in *Process Gas*, as augmented by the district court in *Adelphia*, are the appropriate factors for a court to consider, at a minimum, when deciding to grant or deny such a motion to stay.

Here, the trial court recognized the six factors to be considered as prescribed by the court in *Adelphia*. Trial Court Opinion, 4/9/19, at 4. However, the trial court's analysis fell short of considering all six of the factors, at a minimum, when the trial court considered only the first of the *Adelphia* factors – similarity of issues. *Id.* Specifically, the trial court found that Appellants' argument in support of their motion to stay the civil procedures relied upon "inadmissible and double hearsay evidence" in the form of newspaper articles detailing that "Dougherty was the subject of federal and state criminal investigations[.]" *Id.* at 3, 6. The record was devoid of specific evidence of, *inter alia*, "sworn affidavits, search warrants, specific criminal charges or indictments that might enable an *Adelphia* analysis[.]" *Id.* at 7. As a result, the trial court was "[u]nable to determine from the record [] if there [were] enough commonality of issues, parties and remedies sought to satisfy the first of the *Adelphia* factors[.]" *Id.* at 8. This analysis of only the first of the *Adelphia* factors did not adequately accommodate, acknowledge, or permit vindication of Appellants' constitutional rights. Therefore, we find it was an abuse of discretion for the trial court not to weigh all six of the *Adelphia* factors, at a minimum, before deciding to deny the motion to stay.

Consequently, we vacate the order denying Appellants' motion to stay and remand for further proceedings consistent with this opinion. On remand, the trial court shall consider the indictments now filed against Appellants, together with all additional facts and arguments offered by the parties, in

addressing the ***Progress Gas*** factors, as augmented by the decision in ***Adelphia***.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/20